Billy Ray SMITH *v.* STATE of Arkansas

CR 85-32                                          691 S.W.2d 154

Supreme Court of Arkansas
Opinion delivered June 17, 1985
[Rehearing denied July 15, 1985.*]

---

* Purtle, J., would grant rehearing. George Rose Smith and Dudley, JJ., not participating.

248

*Honey & Rodgers*, by: *Danny P. Rodgers*, for appellant.

*Steve Clark*, Att'y Gen., by: *Velda P. West*, Asst. Att'y Gen. for appellee.

JACK HOLT, JR., Chief Justice. The appellant, age 16, entered guilty pleas on January 7, 1977, to charges of rape and aggravated robbery and was sentenced to 40 years and 5 years respectively for the crimes. The sentences were to run consecutively. On November 9, 1983, the appellant filed a motion to withdraw his plea which was granted and a new trial ordered, on July 25, 1984. [Although the motion was apparently untimely pursuant to A. R. Cr. P. 37.2(c), no objection was made below on those grounds.] Following a jury trial on September 18, 1984, the appellant was sentenced to life imprisonment for rape and 50 years for aggravated robbery, the terms to run consecutively. It is from that conviction that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(b).

The appellant raises numerous points on appeal. He challenges the trial court's failure to suppress a confession made by him, and the admission into evidence of a watch owned by the victim; he argues that there was no substantial evidence to support either charge and it was error therefore not to grant his motion for directed verdict; he claims the court erred by imposing a greater sentence on retrial than was originally imposed and by failing to modify the sentences; and finally he argues that the trial judge abused his discretion when he mechanically ordered the sentences served consecutively. The appellant's sundry points fall into three groups and will be discussed in that manner. We find no error.

## I. EVIDENTIARY RULINGS

The first argument raised by the appellant is that the court erred by not suppressing an incriminating statement made by him while he was in custody. In support of this contention, the appellant raises numerous overlapping issues, but basically he maintains that the statement was involuntary because he had not waived his right to remain silent or his right to counsel and had in fact invoked those rights before his statement was taken; the statement was not reliably proven; and the statement was the tainted fruit of an illegal arrest and seizure.

The facts surrounding the commission of the crime were as follows. Lula Brock, age 82, of Murfreesboro, Arkansas, was raped and robbed in her home on December 31, 1976. The appellant was arrested on January 1, 1977, and was interrogated that same day, at which time no statement was made. He was interrogated again on January 3, 1977, when he made a statement admitting he had committed the crime.

According to his statement, the appellant went to Mrs. Brock's house because he figured she would have some money he could take. He said he took a long kitchen-type knife with him and knocked on the back door. Mrs. Brock opened the door and the appellant said he stepped inside, pulled the knife out, grabbed her arm and asked her if she had any money. The appellant told police Mrs. Brock gave him an amount over $200.00 and he then decided to rape her. The appellant described the rape and said he then asked Mrs. Brock if she got a social security check and when she would get her next one. According to the statement, Mrs. Brock told the appellant she would get a check the following

week, the appellant then cut the telephone receiver from the telephone, hid the receiver in the front room of the house and left.

Prior to the 1984 trial, a *Denno* hearing was held to determine the voluntariness of the appellant's confession. Everyone testified who was present at the January 3 interrogation when the statement was made. Joe T. White, who at the time was an investigator for the prosecuting attorney, stated that he advised the appellant of his rights using a standard form, the appellant signed the form, and never requested an attorney. White and the subsequent witnesses all used unsigned copies of the rights form and of the confession that were in the state police files to refresh their memories because the originals of both documents were destroyed about a year and a half before the hearing. Neither document was admitted into evidence.

White further testified that after the appellant waived his rights, he made a statement which White recorded. The statement was then dictated by Sgt. Carroll Page into the official report and signed by the appellant. The witness reviewed the copy of the statement made by the appellant and said it was accurate. White testified that he was basically able to remember the appellant's statement without looking at the copy, but that he did not remember it exactly. White also stated that the appellant would not have known the phone cord was cut if he had not been in Mrs. Brock's house.

George Steele, Jr., who was the prosecuting attorney when the crime occurred, testified that although he was present for the January 3 interview he was not there when the appellant's rights were read to him. Steele stated that he remembered taking the appellant's statement and recalled in general terms what it was about, but did not remember it specifically without looking at the copy. Steele also testified that the appellant did not ask for a lawyer in his presence.

Carroll Page, a criminal investigator with the state police at the time of the incident, testified that he was present at the January 3 interview and heard White advise the appellant of his rights. Page stated that the appellant never asked for a lawyer. He explained that he dictated the statement made by the appellant into the official report. Page also testified he could not specifically remember what was said by the appellant in his confession without looking at the report, but that the copy of the report

accurately reflects the dictated statement.

The appellant's testimony contradicted that of the officials. He stated that his rights were never read to him at the January 3 interview and that neither White nor Page was present. He denied making a confession but said he did offer an alibi. The appellant also testified that he requested an attorney but never received one. The appellant admitted that he was advised of his rights on January 1 when he was arrested but said he did not understand them and does not remember if he signed the rights form. He said he asked for an attorney on January 1 also, but one was never provided.

We have held that,

> In reviewing the admission of a confession over an objection for alleged involuntariness, we make an independent determination based upon the totality of the circumstances and reverse the action of the trial judge only when we find his finding to be clearly against the preponderance of the evidence. . . . Of course, a confession given by an accused while in custody is presumed to be involuntary, and the burden of proving that it was actually voluntary rests upon the state. (citations omitted).

*Freeman et al* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975).

The factors considered in determining voluntariness of a confession are the "age, education, and intelligence of the accused, lack of advice as to his constitutional rights, length of detention, repeated and prolonged nature of questioning, or the use of physical punishment," *Barnes* v. *State*, 281 Ark. 489, 665 S.W.2d 263 (1984).

Here, the appellant was 16; there was no testimony about his education or intelligence level; there was testimony that he was advised of his rights on January 1 and 3, 1977; and there was no evidence of a prolonged detention, repeated questioning, or the use of physical punishment. Under the totality of the circumstances, these factors did not render the confession involuntary.

As to the appellant's contention that he had not waived his right to remain silent and his right to be represented by counsel, and had, in fact, invoked those rights, the three officials who were

present on January 3 all testified that the appellant was so advised and did not request an attorney.

■ While "[i]t is fundamental that if a defendant requests counsel, interrogation must stop immediately and all questioning must take place with counsel present," *Hickerson* v. *State*, 282 Ark. 217, 667 S.W.2d 654 (1984), when the situation presents a swearing match between the officials and the appellant, as here, the conflict in testimony must be resolved by the trial court. *Williamson* v. *State*, 277 Ark. 52, 639 S.W.2d 55 (1982). The judge is not required to believe any witness' testimony, especially the testimony of the accused since he is the person most interested in the outcome of the trial. *Core* v. *State*, 265 Ark. 409, 578 S.W.2d 581 (1979). The judge properly resolved the conflict.

■■ The appellant also argues that his statement was not reliably proven because the original signed copy of the confession had been destroyed and was therefore not available at the trial. The actual statement was not introduced at the trial. Instead, the copy was used to refresh the memory of the three officials who were present during the interrogation. Uniform R. Evid. 1004 (1) provides that the original is not required and other evidence of the contents of a writing is admissible if the original has been destroyed. Furthermore, the state produced at the trial the copy of the statement that was used to refresh the memory of the witnesses in compliance with Unif. R. Evid. 612. The only prohibition against using such testimony is when a witness testifies about a matter about which he has no personal knowledge. Unif. R. Evid. 602. Here, all three witnesses testified that they remembered the statement being made by the appellant and recalled in general terms what was said. The statement was reliably proven.

■ The appellant contends that the state failed to present all material witnesses at the *Denno* hearing since all of the officers who were present at the January 1 interrogation did not testify. It is true that the state must produce all material witnesses to a confession at the suppression hearing or account for its failure to do so. *Williams* v. *State*, 278 Ark. 9, 642 S.W.2d 887 (1982). Here, the testimony was that the confession was made at the January 3 interview and all of the officials who were present then testified. It was not error for the state not to produce all the officials from the January 1 interview since no statement was

made by the appellant at that time.

The appellant's final basis for contending that his confession should have been suppressed is that it was the product of an illegal arrest and was therefore tainted. A review of the record reveals that the arrest was based on probable cause and was therefore not illegal. However, the appellant did not raise this issue at the *Denno* hearing or during the course of the trial below and he is therefore precluded from raising it for the first time in this appeal. *Rutledge* v. *State*, 263 Ark. 300, 564 S.W.2d 511 (1978).

The appellant argues that the court also erred by failing to suppress a watch that was introduced into evidence. When the appellant was arrested he was wearing a watch which was subsequently identified as belonging to Mrs. Brock. The appellant also bases this suppression argument on the fact that the watch was tainted by the illegal arrest. As previously stated, this argument was not made before the trial judge and was not properly preserved for appeal.

## II. DIRECTED VERDICTS

The third and fourth points raised by the appellant are that it was error for the trial court not to grant his motion for directed verdict at the conclusion of the state's evidence.

To prove that the appellant committed an aggravated robbery, pursuant to the statute in effect when the crime was committed, the state had to prove that he committed a robbery and was armed with a deadly weapon or inflicted or attempted to inflict death or serious physical injury upon Mrs. Brock. Ark. Stat. Ann. § 41-2102 (Repl. 1977).

The main evidence of robbery in this case was supplied by the appellant himself in his confession. However, Ark. Stat. Ann. § 43-2115 (Repl. 1977) provides that "[a] confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

The facts that the appellant was wearing a watch belonging to Mrs. Brock when he was arrested and the officers found that the telephone receiver had been cut from the phone and hidden, corroborated the appellant's statement and supplied

the additional proof that a robbery was committed.

The rape charge is also substantiated by evidence other than the appellant's confession. Medical testimony stipulated to by both parties was that Mrs. Brock had been raped. In *Mosley* v. *State*, 246 Ark. 358, 438 S.W.2d 311 (1969), the appellant contended the state failed to make a prima facie case of rape because his confession was the only evidence connecting him with the crime. This court held, [t]hat is all the law requires, it being sufficient for the other proof to show that the offense charged was committed by someone." The evidence here was therefore sufficient.

The motion for directed verdict was properly denied.

### III. SENTENCING

The appellant's final two assignments of error concern the imposition of his sentences. He argues that the court erred by subjecting him to the possibility of receiving greater sentences upon retrial, by imposing greater sentences on retrial, and by failing to modify and reduce his sentences. He also argues the judge erred by mechanically making the sentences consecutive. The appellant asks that the sentences be reduced to those originally imposed.

We first note that the sentences imposed, life for the rape and 50 years for the aggravated robbery, were within the statutory limits. Ark. Stat. Ann. § 41-901 (Repl. 1977). The sentences were therefore legal. *Porter* v. *State*, 281 Ark. 277, 663 S.W.2d 723 (1984).

In support of his contention that the second sentences were excessive, the appellant relies upon *North Carolina* v. *Pearce*, 395 U.S. 711 (1969) where the United States Supreme Court held that, although there is no absolute constitutional bar to imposing a more severe sentence on reconviction, due process requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he received after a new trial. The defendant must be freed of any apprehension of a retaliatory motivation on the part of the sentencing judge. The Supreme Court further held that the reasons for imposition after retrial of a more severe sentence must affirmatively appear in the record and must be based on objective information concerning the defendant's identi-

fiable conduct after the original sentencing proceeding. That decision was followed by this court in *Marshall* v. *State*, 265 Ark. 302, 578 S.W.2d 32 (1979) and by the court of appeals in *Cockerel* v. *State*, 266 Ark. 908, 587 S.W.2d 596 (1979).

*Pearce, Marshall,* and *Cockerel,* however all dealt with a situation where a judge imposed the first sentence and on retrial a judge again imposed a sentence. The fact that the sentence received by a defendant is meted out by a judge both times is the basis for the concern about vindictiveness.

Here, however a judge handed down the first sentence, which was the result of a negotiated plea, but a jury recommended the sentences imposed when the appellant was convicted in the 1984 proceedings.

The issue presented by this case was addressed by the Supreme Court in *Chaffin* v. *Stynchcombe*, 412 U.S. 17 (1973). In *Chaffin* the Court affirmed the rationale of *Pearce* but held that due process of law does not require the extension of *Pearce*-type restrictions to jury sentencing.

The Court found that if the jury is not aware of the first sentence imposed, then vindictiveness is not a problem. There is no evidence in this record that the jury was aware of the first sentences received by the appellant. Any motions in which reference was made to the sentences were made out of the hearing of the jury. *Chaffin* does not require that the jury be unaware that the appellant has previously been tried, just that they not know the specific sentence he received.

The Court in *Chaffin* said:

> *Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process.
> . . .
> This case, then, is controlled by the inquiry into possible vindictiveness counseled by *Pearce*. . . . The potential for such abuse of the sentencing process by the

258

jury is, we think, *de minimis*, in a properly controlled retrial. . . . [T]he jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.

▇ The appellant's first sentence was the result of plea negotiations. An entirely different situation is presented when a jury imposes a sentence after hearing the evidence and reaching a verdict. The judge did not err by allowing the jury to impose greater sentences on retrial.

▇ The final issue presented in this appeal is whether the trial judge mechanically ordered the sentences served consecutively. The judge has the discretion to make sentences consecutive, and we do not reverse absent an abuse of that discretion. *Blair* v. *State*, 284 Ark. 330, 681 S.W.2d 374 (1984). However, there must be an exercise of judgment by the trial judge, "not a mechanical imposition of the same sentence in every case." *Acklin* v. *State*, 270 Ark. 879, 606 S.W.2d 594 (1980). There was no evidence here that the judge mechanically sentenced the appellant.

Affirmed.