Harvey Cecil POE v. STATE of Arkansas

CR 85-166                                722 S.W.2d 576

Supreme Court of Arkansas
Opinion delivered January 26, 1987

*A. James Linder*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Harvey Poe, was convicted of aggravated robbery and sentenced to twenty years imprisonment as an habitual offender. His sentence was affirmed by the Arkansas Court of Appeals on June 27, 1984 in an unpublished opinion. Subsequently, we ordered the trial court, under Rule 37, to conduct an evidentiary hearing with respect to Poe's claim of ineffective assistance of appointed counsel at trial. *Poe* v. *State*, 287 Ark. 292, 698 S.W.2d 297 (1985). After the hearing, the trial court concluded that Poe's allegation was without merit. Poe now appeals, complaining of his appointed counsel's ineffectiveness at trial in not locating and presenting the testimony of certain alibi witnesses. He further asserts that the court erred at the hearing in excluding affidavits from these alibi

witnesses as evidence.

■ When we have ordered a post-conviction hearing pursuant to Rule 37.2(a), the trial court is limited to the issues we have specifically directed it to consider. *Fink* v. *State*, 280 Ark. 281, 658 S.W.2d 359 (1983). Here, the question was whether Poe received effective assistance of counsel. During the hearing, Poe testified that after he was arrested he recalled that he had been at the home of Mr. and Mrs. Andrew Yon, III, on the night of the robbery, and that Mr. Yon verified his recollection over the phone. He said he told his attorney this, and his attorney said he would investigate it and have them subpoenaed. Poe said it was not until he went to trial that he discovered that his attorney had not located the Yons. He said he asked his attorney to move for a continuance, but that his request was ignored.

Two of his ex-wives also testified for Poe. One stated that she had seen Poe at the Yons' home the night of the robbery. The other said Poe had told her he was there and that she then talked to Mr. Yon, who confirmed his story. Another witness testified that she overheard Poe talking to his attorney on the phone about locating the witnesses they had discussed.

Poe's trial attorney testified at the hearing that Poe never told him of any witnesses, other than a man who approached the defendant's table after the state's case had been presented and offered to testify for Poe. His attorney said the man was obviously intending to lie, and that Poe knew this but urged the attorney to call him anyway. He further testified that Poe told him at least ten times before the trial that he had been deer hunting by himself the night of the robbery.

■ The trial judge chose to believe the testimony of the attorney rather than Poe and his witnesses, all of whom, the judge noted, had some relationship with Poe. It is for the trial court to resolve conflicts in testimony, *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985), and we will not reverse the trial court's findings in that regard unless they are clearly wrong. *Hicks* v. *State*, 289 Ark. 83, 709 S.W.2d 87 (1986). In this instance, we cannot say the court's findings were erroneous.

■ Poe, in an effort to bolster his own testimony, attempted to introduce into evidence the affidavits of the Yons,

the two alibi witnesses. These were considered by us in honoring Poe's request for a Rule 37 hearing. Poe argues that because this court considered the affidavits for purposes of petitioning for a Rule 37 hearing, they are likewise admissible as evidence in the hearing itself. Such is not the case. In ordering a Rule 37 hearing, we are not bound by the strict rules of evidence and will normally grant such relief when affidavits establish a prima facie showing in support of the petitioner's complaint. Although post-conviction hearings are relatively informal, the rules of evidence still apply there. Testimony, to be admissible, must be under oath and subject to cross-examination. *Lewis* v. *State*, 251 Ark. 128, 471 S.W.2d 349 (1971).

Poe argues that the trial court should have allowed these affidavits under A.R.E. Rule 804(b)(5), which allows the trial court to admit hearsay statements of an unavailable declarant under certain circumstances. The rule states:

(5) Other exceptions. *A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness*, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant. (emphasis added)

The "foregoing exceptions" include former testimony subject to cross-examination, statements under belief of impending death, statements against interest, and statements of personal or family history.

In *Hill* v. *Brown*, 283 Ark. 185, 672 S.W.2d 330 (1984), we stated:

The new paragraph [(b)(5)] does not spell out a specific exception to the general prohibition against hearsay. Instead, it lists several matters to be considered as conditions to the admissibility of hearsay not falling within a recognized exception. The substance of this catch-all provision was added by Congress when it adopted the Federal Rules of Evidence. The provision was not intended to throw open a wide door the the entry of judicially created new exceptions to the hearsay rule. To the contrary, the new exception is to be narrowly construed.

Poe claims that the Yons were unavailable declarants because they were working overseas. He contends that because the affidavits had been taken under oath and the Yons had no apparent motive to commit perjury, that the affidavits have the "equivalent circumstantial guarantees of trustworthiness" as required by Rule 804(b). We disagree.

Although it was argued that the Yons were unavailable, it was not shown what efforts were made to gain their presence, or why the state was not informed of the Yons' availability when the affidavits were taken. Further, ordinary affidavits taken under oath do not carry the same trustworthiness as the exceptions to hearsay listed in Rule 804.

In conclusion, we find that the trial court was correct in excluding the affidavits and that the evidence supports its findings.

Affirmed.