Shuntae INGRAM *v.* STATE of Arkansas

CA 95-248                                                918 S.W.2d 724

Court of Appeals of Arkansas
Division I
Opinion delivered April 3, 1996

*Arkansas Public Defender Comm'n,* by: *Elizabeth S. Johnson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. On August 2, 1994, appellant Shuntae Ingram, twelve years old, was charged as being a delinquent for allegedly having participated in a capital felony murder. The State alleged that, on July 29, 1994, Shuntae attempted to commit aggravated robbery, and in the course of the felony caused the death of Susan Harris under circumstances manifesting extreme indifference to the value of human life. The day following this homicide, Shuntae gave a statement to the police. Shuntae later moved to suppress this statement on the grounds that he did not voluntarily, intelligently, or knowingly waive his rights prior to giving the statement and on November 18, 1994, a hearing was held on the motion to suppress. The motion to suppress was denied, and Shuntae was thereafter adjudicated delinquent and committed to the Department of Youth Services. Shuntae now appeals, arguing only that the trial court erred in admitting his statement into evidence.

■■ A defendant may waive his right to remain silent and his right to counsel only if the waiver is made voluntarily, knowingly, and intelligently. *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Custodial statements are presumed involuntary and the State has the burden of proving otherwise. *Johnson* v. *State*, 307 Ark. 524, 823 S.W.2d 440 (1992). Factors to be considered in determining the voluntariness of a custodial statement are the age, education, and intelligence of the accused, the length of the detention during which the statement was given, the use of repeated or prolonged questioning, the use of mental punishment or coercion, and the advice or lack of advice of an accused's constitutional rights. *Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989). In reviewing the trial court's denial of a motion to suppress a custodial statement, this court makes an independent determination based on the totality of the circumstances and will reverse the trial court only if the decision was clearly against a preponderance of the evidence. *Ryan* v. *State*, 303 Ark. 595, 798 S.W.2d 679 (1990). The credibility of the witnesses, who testify to the circumstances surrounding the defendant's custodial statement, is for the trial court to determine. *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985).

■ When, as in the case at bar, the custodial statement at issue was elicited from a juvenile, certain additional precautions must be taken with respect to the juvenile's waiver of his right to counsel. These are enumerated in Arkansas Code Annotated § 9-27-317 (Repl. 1993), which provides:

> (a) Waiver of the right to counsel shall be accepted only upon a finding by the court from clear and convincing evidence, after questioning the juvenile, that:

> (1) The juvenile understands the full implications of the right to counsel;

> (2) The juvenile freely, voluntarily, and intelligently wishes to waive the right to counsel; and

> (3) The parent, guardian, custodian, or counsel for the juvenile has agreed with the juvenile's decision to waive the right to counsel.

> (b) The agreement of the parent, guardian, custodian, or attorney shall be accepted by the court only if the court finds:

(1) That such person has freely, voluntarily, and intelligently made the decision to agree with the juvenile's waiver of the right to counsel;

(2) That such person has no interest adverse to the juvenile; and

(3) That such person has consulted with the juvenile in regard to the juvenile's waiver of the right to counsel.

(c) In determining whether a juvenile's waiver of the right to counsel was made freely, voluntarily, and intelligently, the court shall consider all the circumstances of the waiver, including:

(1) The juvenile's physical, mental, and emotional maturity;

(2) Whether the juvenile and his parent, guardian, custodian, or guardian ad litem understood the consequences of the waiver;

(3) Whether the juvenile and his parent, guardian, or custodian were informed of the alleged delinquent act;

(4) Whether the waiver of the right to counsel was the result of any coercion, force, or inducement;

(5) Whether the juvenile and his parent, guardian, custodian, or guardian ad litem had been advised of the juvenile's right to remain silent and to the appointment of counsel.

(d) No waiver of the right to counsel shall be accepted in any case in which the parent, guardian, or custodian has filed a petition against the juvenile, initiated the filing of a petition against the juvenile, or requested the removal of the juvenile from the home.

(e) No waiver of the right to counsel shall be accepted in any case where counsel was appointed due to the likelihood of the juvenile's commitment to an institution under § 9-27-316(d).

(f) All waivers of the right to counsel shall be in writing and signed by the juvenile and his parent, guardian, or custodian.

Officer Scott Armstrong of the North Little Rock Police Department testified that, at about 2:00 p.m. on July 29, 1994, Shuntae and his mother arrived at the police station for questioning. Using a standard Statement of Rights form, Officer Armstrong read each right to Shuntae, and Shuntae initialled and represented that he understood each right. Officer Armstrong stated that Shuntae was very attentive, did not appear to be under the influence of alcohol or drugs, and did not appear unwilling to waive his rights. Shuntae's mother was present at all times during the explanation of Shuntae's rights and during his statement, and prior to the statement she signed a rights waiver form and consented to him giving a taped account of the events of the previous day.

Officer Jim Chapman was also present during the questioning of Shuntae. He stated that he recorded Shuntae's statement and that the statement was given without objection by either Shuntae or his mother. The taped statement lasted from about 4:51 p.m. until 5:31 p.m. According to Officer Chapman, Shuntae was not coerced and, as far as he could tell, his statement was voluntary. He further testified that he told Shuntae and his mother that they could have a lawyer, and that if they asked for a lawyer at any time he would stop the questioning. However, neither requested a lawyer nor asked that the questioning be terminated.

Shuntae's taped statement indicated that he had been involved in criminal activity on the previous day. He told the police officers that he and three other boys entered a North Little Rock residence in an attempt to rob a suspected drug dealer of drugs and money. According to Shuntae, he and the other boys tied shirts over their faces to hide their identity, and upon entering the house one of the boys pulled a gun and demanded money. The victim, Susan Harris, pulled a gun out of her purse in an attempt to defend herself, at which time a struggle ensued and Ms. Harris was fatally shot. After taking some money and drugs, the boys fled.

Shuntae's mother gave testimony regarding the custodial interrogation, and stated that the officers asked her if it was all right for Shuntae to answer some questions, to which she replied, "Yes." She testified that she wanted to know the truth, and advised Shuntae to tell the officers what had happened. Ms. Ingram acknowledged that she signed the waiver of rights form, that she was aware that anything Shuntae said could be used against him in court, and that the officers told Shuntae that he did not have to talk to them. She

also admitted that the police never threatened Shuntae. However, Ms. Ingram stated that both she and her son were scared and nervous during the interrogation.

Shuntae testified on his own behalf, and acknowledged that he signed the rights waiver forms. He stated that the officers told him if he did not tell the truth he could get the electric chair, but further stated "[t]he police didn't really threaten me." Shuntae asserted that he did not really understand his rights when he waived them. However, he remembered the officers telling him that he did not have to talk to them and that any statement he made could be used against him in court. He testified that he decided to tell the police what had happened because his mother advised him to do so.

For reversal, Shuntae contends that his statement was errone-ously admitted into evidence because it was not a product of a voluntary, intelligent, or knowing waiver of his constitutional rights. He asserts that he and his mother were nervous when they agreed to cooperate with the officers, and that neither fully under-stood his rights. Shuntae further points out that he was only twelve years old at the time of the interrogation, and that he had below average comprehension and reading skills. Dorothy Wooley, an educational examiner, testified that Shuntae could read and write, but only on about a fourth-grade level. Ms. Wooley also diagnosed Shuntae with Attention Deficit Hyperactivity Disorder (ADHD), and she testified that the impulsiveness associated with this disorder could have impacted his signing of the waiver form. Finally, Ms. Wooley concluded that "I do not believe Shuntae's intellectual development is such that he could perceive the implications and consequences of signing [the] form after having it read to him."

■ We find that the State satisfied the requirements of Ark. Code Ann. § 9-27-317 (Repl. 1993) and that, based on the totality of the circumstances, the trial court's refusal to suppress Shuntae's confession was not clearly against a preponderance of the evidence. Shuntae and his mother signed the requisite rights waiver forms and both acknowledged that they understood that Shuntae did not have to give a statement and that anything he said could be used against him in court. Although Shuntae testified that the officers threatened him with the electric chair if he refused to give a statement, the trial court was not bound to believe this testimony. Significantly, both Shuntae and his mother agreed that his statement was not coerced. Rather, the statement was given because Shuntae's mother advised

him to tell the truth. Moreover, the evidence shows that Shuntae and his mother were repeatedly informed of his right to an attorney, and that if this right was invoked the questioning would stop. The officers indicated that Shuntae gave the statement voluntarily and noted that he was calm and attentive during questioning. The questioning lasted about three-and-one-half hours, and Officer Chapman stated that during this time he would have given Shuntae periodic breaks, but none were requested. On these facts, we find no error in the trial court's admission of the statement.

Shuntae makes much of the fact that he was only twelve years old at the time of his confession, possessed below-average mental abilities and was afflicted with ADHD. Nevertheless, Ms. Wooley acknowledged that he could read and write and the evidence showed that he had completed the sixth grade. Despite his alleged mental deficiencies, our supreme court has on numerous occasions upheld a suspect's waiver of *Miranda* rights even when the suspect was determined to be intellectually impaired. *See Hart* v. *State*, 312 Ark. 600, 852 S.W.2d 312 (1993); *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989). Although Shuntae was twelve years old, youth alone will not prevent a voluntary confession or a knowing waiver of constitutional rights. *See Rouw* v. *State*, 265 Ark. 797, 581 S.W.2d 313 (1979). We find that Shuntae's age and mental capacity were factors to consider, but the trial court committed no error in concluding that these factors did not render his confession inadmissible.

Affirmed.

COOPER and STROUD, JJ., agree.