Azalea MATTHEWS *v.* STATE of Arkansas

CA 98-1110                                         991 S.W.2d 639

Court of Appeals of Arkansas
Division IV
Opinion delivered June 9, 1999

*William R. Simpson, Jr.*, Public Defender, by: *Lott Rolfe, IV*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this juvenile-delinquency case is the daughter of Larry and Shirley Matthews. Larry Matthews died and Shirley Matthews was injured in a fire that began in the early morning hours of February 16, 1998, outside the master bedroom of their home. Traces of

accelerants were found in the hallway leading to the master bedroom, and gasoline cans were found in and outside the home. Appellant gave a statement in which she admitted that she poured the contents of a half-full can of gasoline in front of her mother's bedroom door, set fire to the gasoline, and went outside. After a juvenile-court hearing, appellant was found to have committed capital murder and attempted capital murder, was adjudicated delinquent, and was committed to the custody of the Division of Youth Services for an indeterminate period of time not to exceed her eighteenth birthday, with a recommendation that she be detained until she reaches the age of twenty-one. From that decision, comes this appeal.

For reversal, appellant contends that her statement to the police should have been suppressed because the police officer who took her statement did not obtain her parent's consent to the waiver of her right to counsel or inform her that she had the right to have a parent present with her during questioning; because her statement was not the product of a knowing and intelligent waiver of her rights under Ark. Code Ann. § 9-27-317 (Rep. 1998); and because her statement was coerced in violation of the Fifth Amendment to the United States Constitution. Appellant also contends that there was insufficient evidence to support her adjudication as a delinquent for committing capital murder and attempted capital murder. We affirm.

We first address appellant's contention that the evidence was insufficient to support her adjudication as a delinquent for committing capital murder and attempted capital murder. In reviewing the sufficiency of the evidence in a delinquency case, we consider only the proof that tends to support the finding of guilt, and we will affirm if the finding is supported by substantial evidence. *McGill v. State*, 60 Ark. App. 246, 962 S.W.2d 382 (1998).

Viewing the evidence, as we must, in the light most favorable to the appellee, the record shows that appellant admitted that she poured gasoline in the hallway leading to her parents' bedroom and ignited it with a match. Appellant's sister was getting her baby ready to leave and getting her keys while appellant

did this. After lighting the gasoline, appellant, her sister, and the baby left the house. She stated that she heard her daddy screaming as the room burned, and heard glass breaking as he tried to escape the room but was thwarted by bars on the window. When asked to explain her reason for starting the fire, appellant responded that she "just wanted to do something." Appellant's mother testified that appellant was disciplined earlier in the week for being suspended from school, and that this was the first time that Mr. Matthews had whipped her. A fireman who arrived at the scene testified that the appellant, her sister, and the baby were in the front yard when he drove up, that the girls were not upset but were instead unusually calm, and that they did not approach him to tell him that their parents were in the flaming house, but instead related this information only after being asked if anyone was still inside. Neither of the girls exhibited any emotion whatsoever nor asked how their father was. After the fire was extinguished, however, appellant's sister asked the firemen to see if there was $700.00 in her father's pocket. Shortly thereafter, the girls were seen giggling and laughing in appellant's bedroom. The arson investigator for the Little Rock Fire Department testified that he found no accidental causes for the fire, but that hydrocarbon traces were detected in the hallway leading to the master bedroom. He offered his expert opinion that the fire was started by some sort of accelerant. We hold that the evidence was sufficient to support her adjudication as a delinquent for committing capital murder and attempted capital murder.

Appellant next contends that her statement should have been suppressed because, prior to questioning, she was not informed of her right to speak with or have a parent or guardian present during questioning, and because no parent or guardian consented to appellant's waiver of her right to counsel. This argument, however, fails to take account of the manner in which the law was changed by Act 67 of the Second Extraordinary Session of 1994, which eliminated the requirement that a juvenile's waiver of rights form must be signed by a parent, guardian, or custodian. *Misskelley v. State*, 323 Ark. 449, 469, 915 S.W.2d 702, 712 n.5 (1996). Prior to 1994, Ark. Code Ann. § 9-27-317 (Repl. 1993) provided, in pertinent part, that:

(a) Waiver of the right to counsel shall be accepted only upon a finding by the court from clear and convincing evidence, after questioning the juvenile, that:

* * *

(3) The parent, guardian, custodian, or counsel for the juvenile has agreed with the juvenile's decision to waive the right to counsel.

* * * *

(f) All waivers of the right to counsel shall be in writing and signed by the juvenile and his parent, guardian, or custodian.

This statute was significantly changed by Act 67 of the Second Extraordinary Session of 1994, and now provides that:

(a) Waiver of the right to counsel at a delinquency or family in need of services *hearing* shall be accepted only upon a finding by the court from clear and convincing evidence, after questioning the juvenile, that:

* * *

(3) The parent, guardian, custodian, or counsel for the juvenile has agreed with the juvenile's decision to waive the right to counsel.

* * * *

(f) All waivers of the right to counsel, except those made in the presence of the court pursuant to subsection (a) of this section, shall be in writing and signed by the *juvenile*.

Ark. Code Ann. § 9-27-317 (Repl. 1998) (emphasis added). After limiting the provisions regarding waiver of one's right to counsel in subsection (a) to the enumerated types of hearings, Act 67 also added a new subsection, Section 9-27-317(g)(2), to deal specifically with waiver of counsel in the context of interactions between law enforcement officers and juveniles, and which provides that:

(g)(2)(A) No law enforcement officer shall question a juvenile who has been taken into custody for a delinquent act or criminal offense if the juvenile has indicated in any manner that he:

(i) Does not wish to be questioned;

(ii) Wishes to speak with a parent or guardian or to have a parent or guardian present; or

(iii) Wishes to consult counsel before submitting to any questioning.

(B) Any waiver of the right to counsel by a juvenile shall conform to subsection (f) of this section.

The legislative intent behind these changes was clearly defined in the emergency clause of Act 67, which stated that:

It is hereby found and determined by the Seventy-Ninth General Assembly of the State of Arkansas meeting in the Second Extraordinary Session of 1994 that *the present law requiring the written agreement of a parent, guardian, or custodian before a juvenile taken into custody on an allegation of delinquency may waive counsel and make a statement severely hampers the ability of law enforcement officers to question detained juveniles.* It is further found that confusion exists as to the authority of law enforcement officers to question juvenile witnesses without the prior approval of a parent, guardian, or custodian. Therefore, *in order to immediately allow juveniles taken into custody to waive counsel and make a statement under the same standard as adult arrestees,* and to clarify the authority of law enforcement officers to take statements of juvenile witnesses, an emergency is hereby declared to exist . . . .

(Emphasis added.)

▇▇▇ Appellant asserts that, because a person subject to custodial interrogation must be informed of his right to remain silent and right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966), appellant should likewise have been informed of her right to have a parent or guardian present during questioning. We do not agree. The rights enumerated in the now-familiar *Miranda* warnings arise out of the federal constitution; appellant's right to have a parent or guardian present during questioning arises out of state law. Appellant cites no authority for the proposition that *Miranda* applies to rights arising exclusively under state law. In *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996), the Arkansas Supreme Court held that, under subsection (g), the burden is on the juvenile to ask to consult with his parent. Consequently, we hold that the trial court correctly ruled that the police officer was not required to inform appellant of her right to have a parent or

guardian present prior to questioning. Furthermore, in light of the changes effected by the 1994 amendment to section 9-27-317 that limited its scope to delinquency or family in need of services hearings, and the clear legislative intent to permit juveniles to waive counsel during police investigations in the same manner as adult arrestees, we hold that it was unnecessary under current law for appellant's parent, guardian, or custodian, to consent to her waiver of the right to counsel in connection with her custodial statement.

■ Appellant further contends that her statement should have been suppressed because it was not the product of a knowing and intelligent waiver of her rights under Ark. Code Ann. § 9-27-317. We make this determination by reviewing the totality of the circumstances surrounding the voluntariness of the waiver, including the age, experience, education, background, and intelligence of the defendant, as well as lack of advice of constitutional rights, length of detention, repeated and prolonged questioning, and the use of physical punishment. We will reverse a trial court's ruling on this issue only if it was clearly erroneous. *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998); *see Noble v. State*, 319 Ark. 407, 892 S.W.2d 477 (1995).

Section 9-27-317(f) provides that all waivers of the right to counsel, except those made in the presence of the court pursuant to section 9-27-317(a), shall be in writing and signed by the juvenile. The record shows that appellant was thirteen years old and in seventh grade at the time of the investigation. She had some experience with juvenile court, having been previously found delinquent for fleeing in 1995. By the time the present investigation commenced, Mr. Matthews had been pronounced dead and Mrs. Matthews was hospitalized. Detective Knowles took appellant's statement. He arrived at the police department at approximately 3:15 a.m., and the interview concluded at 4:24. Detective Knowles stated that, because of appellant's age, he employed a different procedure when he advised her of her rights. Although, when questioning an adult, Detective Knowles would normally explain the *Miranda* rights one time only, because of appellant's age he went through the *Miranda* rights twice. He stated that appellant verbally and physically indicated that she understood the rights, and that he was convinced she understood the waiver when

she signed it. This testimony was borne out by the transcript of the interview. Detective Knowles further stated that appellant appeared to be alert and oriented, that her demeanor was very cool and calm, and that her speech was clear and forthright.

■ The essence of appellant's argument under this point is that, given appellant's age, no knowing and intelligent waiver of rights was possible unless an adult was present. However, in a case involving a twelve-year-old defendant, we noted that youth alone will not prevent a voluntary confession or a knowing waiver of constitutional rights. *Ingram v. State*, 53 Ark. App. 77, 918 S.W.2d 724 (1996). Furthermore, it is clear that appellant was expressly offered independent adult advice and counsel when she was informed that she could be provided with an attorney free of charge. Although appellant's age is a factor to consider in determining the voluntariness of her waiver, *id.*, our review of the totality of the circumstances has not convinced us that the trial court's ruling on the issue of waiver was clearly erroneous.

■ Finally, appellant contends that her statement should have been suppressed because it was obtained through intimidation and coercion. At the delinquency hearing, appellant testified that she originally told the police that she did not set her house on fire, and made her self-incriminatory statement only because the police officer told her he was going to send her to the county jail if she kept on lying. However, this differed from her recorded statement, in which appellant affirmed that she had been treated "okay," had not been hurt by anyone, and had not been told what to say. Furthermore, Detective Knowles testified that, although he did not believe appellant's initial exculpatory version of the events, he did not intimidate, coerce, or influence appellant in any way regarding her statement. When testimony on the circumstances surrounding the taking of a custodial confession is conflicting, it is the trial court's province to weigh the evidence and resolve the credibility of the witnesses. *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998). In light of the totality of the circumstances, we hold that the trial judge did not err in finding that appellant's confession was voluntarily given.

Affirmed.

ROAF and HART, JJ., agree.